**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**NEWARK DIVISION**

| | |
|---|---|
| **MOHAMED SHIBL,** individually and on behalf of all others similarly situated, <br><br> *Plaintiff*, <br><br> *v.* <br><br> **DECCAN SPICE LIMITED LIABILITY COMPANY**, a New Jersey company, <br><br> *Defendant*. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

<u>**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**</u>

Plaintiff Mohamed Shibl ("Shibl" or "Plaintiff Shibl") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Deccan Spice Limited Liability Company ("Deccan Spice" or "Defendant Deccan Spice") to stop its practice of sending unsolicited text messages to cellular telephones without the recipient's prior express written consent and to obtain redress for all persons injured by its conduct. Plaintiff Shibl, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**PARTIES**

1.      Plaintiff Mohamed Shibl is a natural person who resides at 1715 Broadway Street, San Francisco, California 94109.

1

2.      Defendant is a company organized and existing under the laws of the State of New Jersey with a principal place of business located at 771 Newark Ave, Jersey City, NJ 07306.

## NATURE OF THE ACTION

3.      Senator Hollings, one of the original sponsors of the Telephone Consumer Protection Act ("TCPA"), described robocalls as "the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone cord out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended telephone subscribers another option: telling the autodialers to simply stop calling." *Osario v. State Fram Bank, F.S.B.,* 746 F.3d 1242, 1256 (11th Cir. 2014).  Thus, the TCPA was enacted to empower the private citizen and protect the privacy (and perhaps the sanity) of consumers nationwide.

4.      In an attempt to skirt the law and ultimately increase its bottom line, Defendant text messages consumers using an autodialer on their cellular telephones without their prior express written consent.  Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the repeated sending of unwanted solicitation text messages to consumers' cellular telephones without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

5.      By sending these autodialed text messages, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to the wear and tear on their cellular telephones, consumption of battery life, lost cellular minutes, loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such

calls, in the form of the diminished use, enjoyment, value, and utility of their cellular telephone plans. Furthermore, Defendant sent the text messages knowing they interfered with Plaintiff and the other Class members' use and enjoyment of, and the ability to access their cellphones, including the related data, software, and hardware components.

6.      The TCPA was enacted to protect consumers from autodialed telephone calls like those alleged and described herein. In response to Defendant's unlawful conduct, Plaintiff files this lawsuit seeking injunctive relief, requiring Defendant to cease all autodialed telephone calling activities to cellular telephones without first obtaining prior express written consent, as well as an award of statutory damages to the members of the Classes under the TCPA, costs, and reasonable attorney's fees.

7.      Defendant is a restaurant that has multiple locations and advertises its commercially available goods and services to consumers.

8.      Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the sending of repeated and unwanted solicitation text messages to consumers' cellular telephones without their prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA").

### A.  Defendant Transmits Text Messages to Consumers Who Do Not Want Them

9.      Defendant sends text messages to consumer's cellular telephones in an attempt to solicit business and ultimately increase its bottom line.

10.      Defendant sends text messages from telephone number 201-746-4069 (the "4069 Number").

11.    In sending these text messages, Defendant took no steps to acquire the written prior express consent of Plaintiff or the Class Members who received the unsolicited text messages.

12.    Defendant sent the same (or substantially the same) text message calls *en masse* to thousands of cellular telephone numbers throughout the United States.

13.    In sending the text messages at issue in this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant (or its agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse,* in an automated fashion without human intervention. Defendant's ATDS includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous text message calls simultaneously (all without human intervention).

14.    Defendant was and is aware that text messages were and are being made without the prior express written consent of the text message recipients.

**B.    Defendant Transmits Text Messages to Consumers Who Have Expressly Opted-Out**

15.    Defendant sends unauthorized text messages to cellular subscribers who have expressly "opted-out" or requested not to receive text messages. But, even if any prior express written consent existed, Defendant is required to honor each stop-request as a termination of any prior consent. Accordingly, any autodialed text message (other than a final one-time confirmation text message confirming the recipient's desire to not receive such messages) sent to a cellular subscriber after receiving an express stop request is done without prior express written consent.

16.     To help mobile marketers navigate regulatory compliance, the Mobile Marketing Association ("MMA") publishes specific guidelines based on accepted industry practices for all mobile marketers. Those guidelines include industry best practices for processing and honoring stop requests from consumers.

17.     According to the MMA's October 2012 U.S. Consumer Best Practices for Messaging, "[a] subscriber must be able to stop participating and receiving messages from any program by sending STOP to the short code used for that program. . . END, CANCEL, UNSUBSCRIBE or QUIT should also be opt-out key words for all programs; however content providers should feature the word STOP in their advertising and messaging. . . When sent, these words cancel the subscriber's previous opt-in for messaging." Further, "[t]he content provider must record and store all opt-out transactions."

18.     CTIA[1] similarly advises that standards for processing opt-out messages in shortcode programs:

> Functioning opt-out mechanisms are crucial for all text messaging programs. Programs must always acknowledge and respect customers' requests to opt out of programs
> …
> Short code programs must respond to, at a minimum, the universal keywords STOP, END, CANCEL, UNSUBSCRIBE, and QUIT by sending an opt-out message and, if the user is subscribed, by opting the user out of the program. Subsequent text, punctuation, capitalization, or some combination thereof must not interfere with opt-out keyword functionality.[2]

---

[1] The CTIA is an international non-profit organization that audits and enforces the rules surrounding carrier-based text messaging programs. Together, the MMA and the CTIA establish and publish guidelines setting forth accepted industry best practices for mobile marketing.

[2] *See,* CTIA's Short Code Monitoring Program, *Short Code Monitoring Handbook*, Version 1.6, effective July 16, 2016, page 4, available at https://www.usshortcodes.com/info/static/docs/CTIA%20Short%20Code%20Monitoring%20Handbook%20v1.5.2.pdf

5

19.     CTIA additionally provides guidance on standards for notifying cellular telephone users about their ability to opt-out of text message programs:

> Recurring-messages programs must also display opt-out instructions at program opt-in or at regular intervals in content or service messages, at least once per month. Opt-out information must be displayed on the advertisement. A program may deliver one final message to confirm a user has opted out successfully, but no additional messages may be sent after the user indicates a desire to cancel a short code program.[3]

20.     Again, Defendant simply ignores these accepted industry guidelines. Instead, Defendant makes it difficult for consumers to opt-out or unsubscribe to its solicitation text messages.

21.     Despite receiving numerous express stop requests from cellular subscribers, including Plaintiff, Defendant continues to send automated text messages to these subscribers.

22.     Defendant knows, or is reckless in not knowing, that its text messages to these cellular subscribers are unauthorized. Ultimately, consumers are forced to bear the costs of receiving these unsolicited and unauthorized text messages.

23.     Upon information and belief, and via investigation by Plaintiff's attorneys, each of the text messages sent to Plaintiff and the Classes are affiliated with Defendant.

24.     By sending the text messages at issue in this Complaint, Defendant caused Plaintiff and the other members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the sending and receipt of such text messages, a loss of value realized for the monies consumers paid to their carriers for the receipt of such text messages, and a loss of the use and enjoyment of their phones, including wear and tear to the related data, memory, software, hardware, and battery components, among other harms.

---

[3] *Id.*

6

25.     In response to Defendant's unlawful conduct, Plaintiff filed this action seeking an injunction requiring Defendant to cease all unsolicited text messaging activities and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it conducts a significant amount of business in this District, solicits consumers in this District, sent and continues to send unsolicited text messages in this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

27.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts a significant amount of business within this District and markets to this District, and because the wrongful conduct giving rise to this case occurred in and/or was directed to this District. Venue is additionally proper because both Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

28.     In recent years, companies such as Defendant have turned to unsolicited telemarketing as a way to increase its customer base. Widespread telemarketing recruits new customers.

29.     Text messages, like the ones sent in the instant action, are considered calls under the TCPA. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (July 3, 2003); *see also Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009) (noting

that text messaging is a form of communication used primarily between telephones and is therefore consistent with the definition of a "call").

30.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

31.     Yet, in violation of this rule, Defendant fails to obtain any prior express written consent to send solicitation text messages to consumers' cellular telephone numbers.

32.     At all times material to this Complaint Defendant was and is fully aware that unsolicited telemarketing calls are being made to consumers' cellular telephones through their own efforts and/or their agents.

33.     Defendant knowingly made (and continues to make) unsolicited telemarketing text messages without the prior express written consent of the recipients and knowingly continued to send text messages to them after requests to stop. In so doing, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF MOHAMED SHIBL

34.     Shibl placed a delivery order with Deccan Spice for a meal over the telephone.

35.     During the call, Shibl was asked by the Deccan Spice representative for his telephone number for the sake of the order.  Shibl orally provided Deccan Spice with his cellular telephone number.

36.    Deccan Spice did not inform Shibl that, because Shibl gave it his number, he would now be subject to repeated telemarketing text messages via an autodialer on his cellular telephone.

37.    However, Shibl has been receiving a series of solicitation text messages from Deccan Spice since May 2017, on his cellular telephone from the 4069 Number.

38.    On May 13, 2017 at 6:48 a.m., Plaintiff received a text message from the 4069 Number on his cellular telephone, which is owned and/or operated by Deccan Spice.

39.    The text message from the 4069 Number read, "Deccan Spice Offer: FREE Appetizer with purchase of $30 or more! Exp 5/15/2017 To Redeem Tap http://offrz.co/o/43TGW/ before paying[.] Deccan Spice Offer: FREE Appetizer with purchase of $30 or more! Exp 5/15/2017 To Redeem Tap http://offrz.co/o/43TGW/ before paying" (the "May 13 Text Message").

40.    Frustrated at receiving unwanted texts, Shibl responded to the May 13 Text Message by texting, unequivocally, "Please stop sending these messages to me! I never signed up!"

41.    Despite Shibl's request to stop being texted, Deccan Spice continued to harass Shibl with more text messages from the 4069 Number through September of 2017 with similar or substantially similar text messages soliciting Shibl to make a purchase "before paying."  See **Exhibit A**.

42.    From August 1, 2017, Plaintiff received additional solicitation text messages from the 4069 Number on the following dates/times:

August 1, 2017 at 6:39 a.m.

August 5, 2017 at 6:42 a.m.

August 8, 2017 at 6:38 a.m.

August 12, 2017 at 7:00 a.m.

August 22, 2017 at 6:39 a.m.

August 26, 2017 at 6:58 a.m.

August 29, 2017 at 6:39 a.m.

September 2, 2017 at 7:38 a.m.

September 5, 2017 at 6:35 a.m.

43.     Shibl made a number of additional requests for the text messages to stop. On September 5, 2017 specifically, Shibl texted both "STOP" and "stop" to 201-746-4069 at 9:02 p.m.

44.     Despite his new attempts to get the texts to stop, Shibl received another text on September 9, 2017 at 7:42 a.m. from Defendant using the 4069 Number. The text reads, "Deccan Spice Offer: FREE Appetizer with purchase of $30 or more! Exp 9/11/2017 To Redeem Tap http://offrz.co/o/43TGW/ before paying"



45.     On September 9, 2017, Shibl became so frustrated at receiving Deccan Spice's

unwanted solicitation text messages that he called Deccan Spice directly, specifically to demand

that it cease sending him text messages.  Despite this, Deccan Spice sent him another unwanted

solicitation text message three (3) days later on September 12, 2017.

46.     On September 16, 2017 at 7:23 a.m. Plaintiff received another text message on his

cellular phone, this time from Defendant using phone number 201-733-3315.

47.     Another text message was received from Defendant on September 19, 2017 at

6:38 a.m. using phone number 201-733-3315.

48.     Yet another text message was received from Defendant on September 23, 2017 at

6:43 a.m. using phone number 201-733-3315.

49.     The May 13 Text Message is produced below.[4]



50.     The link, http://offrz.co/o/43TGW/ leads a consumer to the following URL,

http://offrz.co/o/43TGW/offers/available, which displays the following image:

---

[4] Also see **Exhibit A**.



51.    Shibl did not request that Deccan Spice and/or its affiliates send text messages to him or offer him its services using an ATDS. Simply put, Shibl has never provided his prior express written consent to Deccan Spice to send solicitations text messages to him and he has no business relationship with Deccan Spice.

52.    Deccan Spice failed to produce to Shibl language disclosing that by providing to it his number, Shibl is expressly consenting to be contacted by Deccan Spice on his cellular telephones using an ATDS.

53.    By sending unauthorized text messages as alleged herein, Deccan Spice has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy. In addition, the calls disturbed Plaintiff's use and enjoyment of his cellular telephone, in addition to the wear and tear on the cellular telephone's hardware (including the cellular telephone's battery)

and the consumption of memory on their cellular telephones. In the present case, a consumer could be subjected to many unsolicited text messages as Deccan Spice fails to provide initial instructions for a consumer to opt-out of receiving text messages, or simply ignores opt out requests that it receives.

54.    In order to redress these injuries, Shibl, on behalf of himself and the Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited text messages to cellular telephones.

55.    On behalf of the Classes, Shibl seek an injunction requiring Deccan Spice to cease all wireless text-messaging activities and an award of statutory damages to the Class members, together with costs and reasonable attorneys' fees.

56.    Shibl brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and all others similarly situated and seek certification of the following two Classes:

> **Text Message No Consent Class:** All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent solicitation text messages, (2) to the person's cellular telephone number, and (3) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to send automated text messages to the Plaintiff.

> **Text Message Stop Call Class**: All persons in the United States who from a date four years prior to the filing of the initial complaint in this case through the present: (1) Defendant (or a third person acting on behalf of Defendant) sent text messages, (2) on the person's cellular telephone number, and (3) for solicitation purposes, (4) after the person informed Defendant to stop sending them text messages.

57.    The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its

subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents

have a controlling interest and their current or former employees, officers and directors; (3)

Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion

from the Classes; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated

and/or released. Plaintiff anticipates the need to amend the Class definitions following

appropriate discovery.

58.    **Numerosity**: The exact sizes of the Classes are unknown and not available to

Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and

belief, Defendant sent autodialed text messages to thousands of consumers who fall into the

definition of the Classes. Members of the Classes can be easily identified through Defendant's

records.

59.    **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the Classes, and those questions predominate over any

questions that may affect individual members of the Classes. Common questions for the Classes

include, but are not necessarily limited to the following:

(a)  whether Defendant's conduct constitutes a violation of the TCPA;

(b)  whether Defendant utilized an automatic telephone dialing system to send text
     messages to members of the Classes;

(c)  whether members of the Classes are entitled to statutory and treble damages
     based on the willfulness of Defendant's conduct;

(d)  whether Defendant obtained prior express written consent to contact any class
     members; and

(e)  whether Defendant continued to send text messages after consumers
     communicated an opt-out.

60.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to the Classes.

61.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff.  Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff the Text Message No Consent Class)**

62. Plaintiff repeats and realleges paragraphs 1-61 of this Complaint and incorporates them herein by reference.

63. Defendant sent autodialed solicitation text messages to cellular telephone numbers belonging to Plaintiff and other members of the Text Message No Consent Class without first obtaining prior express written consent to receive such autodialed solicitation text messages.

64. Defendant sent the text autodialed text messages using equipment that had the capacity to store or produce telephone numbers using a random or sequential number generator, to receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendant, also known as a predictive dialer, dialed numbers from a list, or dialed numbers from a database of telephone numbers, in an automatic and systematic manner. Defendant's autodialer disseminated information *en masse* to Plaintiff and other consumers.

65. By sending the unsolicited text messages to Plaintiff and the cellular telephones of members of the Text Message No Consent Class without their prior express written consent, and by utilizing an automatic telephone dialing system to make those calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

66. Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Text Message No Consent Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

67.    In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Text Message No Consent Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Text Message Stop Call Class)**

68.    Plaintiff repeats and realleges paragraphs 1-61 of this Complaint and incorporates them herein by reference.

69.    Defendant and/or its agent transmitted unsolicited text message calls to cellular telephone numbers belonging to Plaintiff and the other members of the Text Message Stop Call Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention.

70.    The telephone dialing equipment utilized by Defendant and/or its agents, which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

71.    These text messages were made *en masse* and without the consent of the Plaintiff and the other members of the Text Message Stop Call Class to receive such wireless text messages. Indeed, consent had been revoked by everyone since they each had responded with the common SMS codes to opt-out of further communications, such as (but not limited to) "STOP," "REMOVE," "OPT OUT." or "CANCEL."

72.    Plaintiff and members of the Text Message Stop Call Class expressly requested that Defendant no longer send text messages to them, after which Defendant failed to place

Plaintiff and members of the Text Message Stop Call Class on Defendant's internal do-not-call list (or failed to do so within a reasonable time period).

73.    The text messages to Plaintiff and the Text Message Stop Call Class were made after any consent had been expressly revoked by responding with an opt-out request, such as "STOP" or similar language.  This alone violates the TCPA.

74.    Additionally, Defendant's supposed opt out mechanism isn't cost free. Among other things, it requires the transmission of data from the user's cellular telephone that results in a reduction of the user's allowable data.

75.    Based on such conduct, Defendant has violated 47 U.S.C. § 227(b)(1)(A)(iii).

76.    Defendant violated 47 C.F.R. § 64.1200 (d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiff and the Text Message Stop Call Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

77.    As a result of such conduct, Plaintiff and the other members of the Text Message Stop Call Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

78.    In the event that the Court determines that Defendant's conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Text Message Stop Call Class.

**PRAYER FOR RELIEF**

79.    An order certifying the Classes as defined above, appointing Plaintiff as the representative of the Classes, and appointing his counsel as Class Counsel;

80.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the Class Members;

81.     An order declaring that Defendant's actions, as set out above, violate the TCPA;

82.     A declaratory judgment that Defendant's text-messaging equipment constitutes an automatic telephone dialing system under the TCPA;

83.     An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful text-messaging practices;

84.     An order requiring Defendant to identify any third-party involved in the autodialed text messaging as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

85.     An injunction requiring Defendant to cease all unsolicited autodialed text-messaging activities, and otherwise protecting the interests of the Classes;

86.     An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive text messages made with such equipment;

87.     An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until they establish and implement policies and procedures for ensuring the third-party's compliance with the TCPA;

88.     An injunction prohibiting Defendant from conducting any future telemarketing activities until they have established an internal Do Not Call List as required by the TCPA;

89.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

90.    Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**MOHAMED SHIBL**, individually and on behalf of Classes of similarly situated individuals

Dated: October 16, 2017

By: _/s/Stefan Coleman_____
       One of Plaintiff's Attorneys

Stefan Coleman
Law@StefanColeman.com
1072 Madison Ave, Suite 1
Lakewood, NJ 08701
(877) 333-9427
(888) 498-8248

Manuel Hiraldo, Esq.*
401 E. Las Olas Blvd, Ste 1400
Fort Lauderdale, Fl 33301
954-400-4713
mhiraldo@hiraldolaw.com

Attorney for Plaintiff and the Classes
*Pro Hac Vice to be sought

# EXHIBIT A



●○○○○ AT&T  LTE                3:22 PM                🔋 ✈ ⏰ 50% ▂

**+1 (201) 746-4069**

Sat, May 13, 6:48 AM

Deccan Spice Offer:
FREE Appetizer with purchase of
$30 or more!
Exp 5/15/2017
To Redeem Tap http://offrz.co/o/
43TGW/ before paying

Deccan Spice Offer:
FREE Appetizer with purchase of
$30 or more!
Exp 5/15/2017
To Redeem Tap http://offrz.co/o/
43TGW/ before paying

Sat, May 13, 9:52 AM

Please stop sending these
messages to me! I never signed up!

Mon, May 15, 2:52 PM

Deccan Spice Offer:
FREE Chicken Biryani with purchase
of $25 or more!
Exp 5/19/2017
To Redeem Tap http://offrz.co/o/
43TGW/ before paying

Sat, May 20, 7:02 AM



Text Message



*Figure 1 - Today = August 29, 2017*



*Figure 2 - Today = September 12, 2017*



Figure 3 - Tuesday = September 19, 2017 and Yesterday = September 23, 2017